O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JOHN MARTINEZ,                        )   NO. SACV 12-00809-MAN
                                      )
              Plaintiff,              )
                                      )   MEMORANDUM OPINION
         v.                           )   AND ORDER
                                      )
CAROLYN W. COLVIN,[1]                 )
Acting Commissioner of Social         )
Security,                             )
                                      )
              Defendant.              )
_____ )

Plaintiff filed a Complaint on May 24, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's applications for a period of disability ("POD"), disability insurance benefits ("DIB"), and supplemental security income (SSI"). On July 17, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on March 12, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative

---

[1]    Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

1 proceedings.

2

3 **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

4

5 On March 9, 2009, plaintiff filed applications for a POD, DIB, and SSI, alleging an inability

6 to work since January 1, 2007 (Administrative Record ("A.R.") 22), due to:   "[s]tabwound;

7 diabetes II[;] hypertension[;] suspect glaucoma; M[RS]A on eyes; renal cyst; [one] kidney

8 significantly large[r] []than the other; hepatitis C; brachycardia; enlarged spleen; anxiety;

9 depression; bipolar [disorder]; [and a] skin disorder" (A.R. 193).  At the reconsideration level,

10 plaintiff additionally alleged that he suffers from "[g]astritis, hiatal hernia, pain in shoulders, feet,

11 legs, and back.  Eyes hurt and I am seeing things that are not real," which commenced on August

12 6, 2009.  (A.R. 209.)

13

14 The Commissioner denied plaintiff's claim initially, and upon reconsideration.  (A.R. 68-76,

15 83-95.)  On December 1, 2010, plaintiff, who was represented by counsel, appeared and testified

16 at a hearing before Administrative Law Judge Joseph Lisiecki (the "ALJ").  (A.R. 41-59.)  Arnold

17 Ostra, a medical expert, and Susan Allison, a vocational expert, also testified.  (*Id.*)  On January

18 19, 2011, the ALJ denied plaintiff's claim (A.R. 22-30), and the Appeals Council subsequently

19 denied plaintiff's request for review of the ALJ's decision (A.R. 1-7).  That decision is now at issue

20 in this action.

21

22 **SUMMARY OF ADMINISTRATIVE DECISION**

23

24 The ALJ found that plaintiff last met the insured status requirements of the Social Security

25 Act on December 31, 2008, and that he has not engaged in substantial gainful activity since the

26 alleged onset date of January 1, 2007.  (A.R. 24.)  The ALJ determined that plaintiff has the

27 severe impairments of:  "diabetes mellitus (insulin dependent); hepatitis C; a mood disorder and

28 psychosis"; nonetheless, the ALJ concluded that plaintiff does not have an impairment or

1   combination of impairments that meets or medically equals one of the listed impairments in 20
2   C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,
3   416.920(d), 416.925, 416.926).  (A.R. 24-25.)
4
5        After reviewing the record, the ALJ determined that plaintiff has the residual functional
6   capacity ("RFC") to perform "medium work as defined in 20 C.F.R. [§§] 404.1567(c) and
7   416.967(c) except that he may only occasionally bend, stoop, crawl and climb stairs."  (A.R. 26.)
8   Further, "[h]e may never climb ladders, ropes or scaffolds and he must avoid exposure to
9   unprotected heights.  He is also limited to simple tasks and may have only occasional contact with
10  the public, co-workers and supervisors."  (*Id.*)
11
12       The ALJ found that plaintiff was unable to perform his past relevant work ("PRW") as a
13  "texture painter," "painter helper," "security guard," and "deliverer."  (A.R. 28.)  Additionally, after
14  having considered plaintiff's age,[2] education,[3] work experience, and RFC, the ALJ found that other
15  jobs exist in the national economy that plaintiff could perform, including "sales attendant" and
16  "assembler of plastic hospital products."  (A.R. 29.)  Accordingly, the ALJ concluded that plaintiff
17  has not been under a disability, as defined in the Social Security Act, since January 1, 2007, the
18  alleged onset date.  (A.R. 30.)
19
20                              **STANDARD OF REVIEW**
21
22       Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine
23  whether it is free from legal error and supported by substantial evidence.  Orn v. Astrue, 495 F.3d
24  625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind
25
26       [2]     On the alleged disability onset date, plaintiff was 35 years old, which is defined as
    a younger individual.  (A.R. 29; citing 20 C.F.R. §§ 404.1563, 416.963.)
27
28       [3]     The ALJ found that "[plaintiff] has a limited education and is able to communicate
    in English."  (A.R. 29.)

                                    3

might accept as adequate to support a conclusion.'" *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following issues:  whether the new evidence submitted to the Appeals Council materially undermines the ALJ's decision; and whether the ALJ properly considered

plaintiff's subjective complaints.  (Joint Stipulation ("Joint Stip.") at 4.)

I.      **The Evidence Newly Submitted To the Appeals Council Does Not Undermine The ALJ's Decision.**

Following the ALJ's adverse ruling, plaintiff submitted to the Appeals Council additional medical records from:  (1) St. Jude Medical Center, dated August 20, 2008, through March 1, 2011; (2) Anaheim Memorial Care Medical Center, dated June 4, 2009, through August 2, 2010; (3) UC Irvine Medical Center, dated December 3, 2009, through March 28, 2011; and (4) Coastal Dermatology, dated October 29, 2008, through March 30, 2011.  (A.R. 5.)

The Appeals Council considered the new evidence but determined that it did not provide a "basis for changing the [ALJ]'s decision," and thus, plaintiff's request for review was denied. (A.R. 1-2.)  Because the Appeals Council considered the newly submitted evidence in deciding whether to review the ALJ's decision, this Court also must consider such evidence in determining whether the ALJ's decision was supported by substantial evidence and free from legal error. *See* Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012)(holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"); Warner v. Astrue, 859 F.Supp.2d 1107, 1114–15 (C.D. Cal. 2012)(noting that although the Appeals Councils is not required to provide reasons for discounting additional evidence, the Court reviews "the ALJ's decision in light of the record as a whole, including the evidence submitted for the first time to the Appeals Council")(citing Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231–32 (9th Cir. 2011)).  The Court may remand upon finding that "there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis." *Id.* at 1117.

1    Plaintiff argues that the evidence newly submitted to the Appeals Council "demands an
2  inference of a greater degree of impairment than found by the ALJ," because it demonstrates that
3  his anxiety has been worsening, he suffers from hallucinations, he "may" have schizophrenia, his
4  liver enzymes were very high, his platelet count was low secondary to hepatitis, and he has
5  shoulder pain.  (Joint Stip. at 5.)

6

7    This Court has reviewed the ALJ's decision in view of the record as a whole, including the
8  evidence submitted for the first time to the Appeals Council.  For the reasons discussed below,
9  the Court concludes that the newly submitted evidence submitted does not undermine the ALJ's
10 decision.

11

12    A.    Mental Limitations

13

14    Plaintiff contends that the evidence submitted to the Appeals Council demonstrates that
15 he suffers from severe anxiety, hallucinations, and "possible schizophrenia," which "erode[] the
16 ability to engage in the requirements of work activity."  (Joint Stip. at 5-6.)  However, this
17 evidence was cumulative of evidence supporting plaintiff's allegations of anxiety and
18 hallucinations, which was already included in the record reviewed by the ALJ.  (*See e.g.,* A.R. 409,
19 444, 451-52, 456, 458-59, 462-63, 465-66, 497, 501, 503.)

20

21    Indeed, the ALJ accorded "great weight" to the opinion of consultative psychiatrist Dr.
22 Ernest A. Bagner III, who considered, *inter alia*, plaintiff's complaints of anxiety and auditory and
23 visual hallucinations in determining plaintiff's mental limitations.[4]  (A.R. 409.)  However, giving
24 plaintiff "every benefit of the doubt," the ALJ assigned plaintiff a more limited mental RFC than

25 _____

26    [4]    Dr. Bagner opined that plaintiff would have no limitations interacting with
supervisors, peers, or the public; zero to mild limitations maintaining concentration and attention
27 and completing simple tasks; mild limitations completing complex tasks; and mild to moderate
limitations handling normal stresses at work and completing a normal workweek without
28 interruption.  (A.R. 412.)

that found by Dr. Bagner.  The ALJ, therefore, adopted the mental RFC assessed by the State Agency physician, who also considered and relied on treatment notes indicating plaintiff's complaints of anxiety and hallucinations, in finding that plaintiff was "capable of performing simple, repetitive tasks on a sustained basis."  (A.R. 28, 436-37, 493-94.)  As there was already evidence in the record of plaintiff's complaints of anxiety and hallucinations, which the ALJ properly considered in his decision, the additional evidence presented to the Appeals Council neither undermined nor warranted reconsideration of the ALJ's decision.[5]

Plaintiff also alleges that this "new" evidence demonstrates that his "anxiety has been worsening," citing a November 8, 2010 treatment note from his treating physician Dr. E. Scott. (Joint Stip. at 5.)  However, when read in its entirety, the note indicated that plaintiff's anxiety was "worsening -- in context of [an] upcoming meeting and [Dr. Scott's] departure," *i.e.*, due to the two upcoming events, one of which was the specter of dealing with a new treating physician. (A.R. 612.)  Significantly, treatment notes after November 8, 2010, indicate that plaintiff continued to report anxiety, but there was no indication of any worsening of his anxiety or any other aggravation of his mental health issues.  (A.R. 607-11.)

Finally, plaintiff asserts that the newly submitted evidence demonstrates that he "may" have schizophrenia.  Again, however, when read in context, Dr. Scott did not conclusively diagnose plaintiff with schizophrenia, and plaintiff concedes as much.  Rather, Dr. Scott appears to be speculating as to whether plaintiff's appropriate diagnosis is bipolar disorder, psychotic depression, or, possibly, schizophrenia.[6]  (A.R. 614.)  As Dr. Scott did not offer a definitive diagnosis of schizophrenia, neither the Appeals Council nor the ALJ was required to specifically

---

[5]      Moreover, and significantly, in a treatment note dated September 20, 2010, plaintiff reported that while he had continuing symptoms of hallucinations, they did "not interfer[e] [with] his life."  (A.R. 613.)

[6]      As noted by the ALJ, plaintiff's "therapist noted that . . . [plaintiff]'s mental disorders might be related to . . . [his] substance abuse disorder."  (A.R. 27; citing A.R. 382.)

1    address this issue.  *See* Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(noting that "in

2    interpreting the evidence . . . the ALJ does not need to 'discuss every piece of evidence'").

3

4         In sum, the evidence regarding plaintiff's allegations of anxiety and hallucinations that was

5    presented to the Appeals Council is at best cumulative and does not change the outcome of this

6    case.   New evidence is only considered material if it bears directly and substantially on the

7    decision in this case.  *See* Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).

8

9             B.    Physical Limitations

10

11        Plaintiff next contends that the evidence presented to the Appeals Council demonstrated

12   that his liver enzymes were very high and his platelet count was low, secondary to hepatitis C

13   (Joint Stip. at 5.)  However, plaintiff does not indicate how these test results would undermine

14   the ALJ's decision or would prevent plaintiff from performing work activity.  There was also no

15   indication in the treatment notes of any worsening of symptoms due to plaintiff's hepatitis C.

16   Rather, plaintiff's most recent treatment notes indicate that plaintiff was treating his hepatitis with

17   medication and that his hepatitis was stable.  (A.R. 621 (01/14/10 - hepatitis C "stable"); A.R. 620

18   (02/17/10 - "[patient] needs GI eval[uation] for cont[inued treatment with] Pegasys"; A.R. 618

19   (03/10/10 - continue Pegasys).  Without any competent medical evidence of how a low platelet

20   count and/or elevated liver enzyme levels supports a finding of disability, this additional evidence

21   does not undermine the substantial evidence in support of the ALJ's RFC determination.

22

23        Finally, plaintiff argues that the newly submitted evidence establishes that he has a

24   "shoulder impairment [which] will cause significant reaching and handling limitations that erode

25   the medium exertion occupational base."  (Joint Stip. at 5-6.)  However, aside from plaintiff's own

26   complaints regarding pain in his shoulders, which he stated commenced around August 6, 2009

27   (A.R. 53, 209), there is only a single reference of record that plaintiff reported shoulder pain to

28   a physician.  (A.R. 613.)

8

In a September 20, 2010 treatment note, which was not before the ALJ but was presented to the Appeals Council, plaintiff presented with "shoulder discomfort[,] unable to lift above head – has had these [symptoms] since 18 [years old] – have been slowly progressive."  (A.R. 613.) Dr. Scott noted plaintiff had a decreased range of motion in his left shoulder, and he was unable to fully extend and flexion to 90 degrees.  (*Id.*)  Dr. Scott then diagnosed "[r]otator cuff strain" and noted that plaintiff may "need surgical intervention, however will try [physical therapy] first." (*Id.*)

Significantly, although plaintiff stated that his shoulder pain commenced in August 2009, plaintiff did not report his shoulder pain to any physician until more than a year later.  (A.R. 209, 613.)  Moreover, this single treatment note fails to demonstrate any impairment which would prevent plaintiff from performing work activity for a period of at least twelve months, particularly as Dr. Scott only recommended physical therapy and did not assess any functional limitations associated with plaintiff's rotator cuff strain.  Thus, the Court finds that this single, isolated complaint does not undermine the substantial evidence in support of the ALJ's RFC determination. *See* Robbins, 466 F.3d at 882 ("[A] court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'")(quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); *see also* Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008)(providing that the ALJ did not err in failing to address a physician's recommendation that a plaintiff use a reclinable desk chair while working, because it was not stated as an imperative).

Therefore, in view of the evidence before the ALJ and the additional evidence submitted only to the Appeals Council, this Court finds that the ALJ's decision is supported by substantial evidence.

///
///
///

9

**II.     The ALJ Provided The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony**.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ concluded that "[a]fter careful consideration of the evidence, . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (A.R. 26.)   Significantly, the ALJ cited no evidence of malingering by plaintiff.  Nonetheless, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  (A.R. 26-27.)  Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to his subjective symptom and pain testimony must be "clear and convincing."

The ALJ rejected plaintiff's subjective complaints because:  (1) plaintiff's statements

10

regarding his household chores and daily activities were inconsistent; (2) plaintiff's treatment was inconsistent with his allegation that he was totally disabled; (3) plaintiff's condition improved; and (4) plaintiff engaged in activities of daily living which were inconsistent with his allegation that he was totally disabled.  (A.R. 27.)  As discussed below, the ALJ provided sufficient clear and convincing reasons for rejecting plaintiff's pain and symptom testimony.

The ALJ found plaintiff to be not credible, because he made inconsistent statements regarding his ability to engage in household chores and activities of daily living.  (A.R. 28.)  For example, the ALJ noted that plaintiff reported in his April 13, 2009 "Function Report -- Adult" form that he is able to do household chores, including cleaning, laundry, household repairs, ironing, and mowing if he "feel[s] up to it."  (A.R. 183.)  However, less than three months later, plaintiff reported to Dr. Bagner that he "does not do [any] household chores or daily activities."  (A.R. 410.)  Clearly these two statements are inconsistent, and thus, the ALJ proffered a clear and convincing reason for finding plaintiff to be not credible.

The ALJ further discredited plaintiff because he sought limited treatment for many of his conditions, including his diabetes and hepatitis C, which "indicat[es] his symptoms are less . . . severe than [he] alleges."  (A.R. 28.)  For example, notwithstanding plaintiff's claim that he became disabled in January 2007, the ALJ noted that an April 2008 medical report indicated that plaintiff "did not have a regular primary care physician and did not frequently seek medical care."  (*Id.*; citing A.R. 360.)  Specifically, with respect to plaintiff's treatment for diabetes, the ALJ cited a July 2009 consultative examination, which noted that plaintiff had "only been admitted to the hospital on two occasions for his diabetes."[7]  (A.R. 27; emphasis added.)  With respect to plaintiff's treatment for hepatitis C, the ALJ again cited the April 2008 medical report, which noted

---

[7]     In addition, the ALJ noted that the July 2009 examination also indicated that plaintiff's: "[m]otor, sensory, and reflexes were all intact"; "gait and balance were within normal limits"; and "Phalen's and Tinel's tests were negative."  (A.R. 27.)  Further, the consultative examiner, like the ALJ, found "[plaintiff] would be capable of a limited range of medium work."  (*Id.*)

that plaintiff "never followed up with his doctor regarding his hepatitis C since after being diagnosed in 199[6]."[8]  (*Id.*; citing A.R. 360.)  The ALJ properly reasoned that "if [plaintiff]'s conditions were as debilitating as alleged, [plaintiff] would take all steps possible to alleviate his conditions, including seeking regular treatment." (A.R. 28.)  Accordingly, plaintiff's failure to seek regular treatment for his allegedly disabling impairments constituted a clear and convincing reason for rejecting his credibility.[9]  *See* <u>Flaten v. Sec'y of Health & Hum. Servs.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995)(finding it appropriate for the ALJ to discount plaintiff's credibility because of a lack of medical care during a period of claimed disability).

Additionally, the ALJ noted improvement with respect to plaintiff's mental impairments. (A.R. 27.)  For example, the ALJ noted that "on April 10, 2009, . . . Dr. Scott [found plaintiff's condition] was improving . . . and also that he was feeling less overwhelmed." (*Id.*; citations omitted.)  The ALJ further noted that "[a]t a July 31, 2009 office visit with Dr. Scott, [plaintiff]'s mood was better off[,] . . . [and plaintiff] denied suicidal ideation at a September 2009 office visit." (*Id.*; internal citations omitted.)  Further, the ALJ noted that in a July 2009 consultative examination with Dr. Bagner, plaintiff:  "had good hygiene"; "was well nourished and had a normal posture and gait"; had intact and coherent speech and "tight" thought processes; "showed no flight of thought, looseness of association, thought blocking or distactibility"; "had normal reality contact"; and had "no . . . auditory or visual hallucinations during the interview." (*Id.*)  Accordingly, the above-noted improvement in plaintiff's condition constituted a clear and

---

[8]     The ALJ states that plaintiff was diagnosed with hepatitis C in 1998; however, the treatment note, upon which the ALJ cites in support of his statement, indicates that plaintiff was diagnosed with hepatitis C in 1996.  (*Id.*)

[9]     Plaintiff appears to claim that the ALJ's rejection of plaintiff's credibility based on his limited treatment for hepatitis C was improper, because "[plaintiff] had to stop taking medication for his hepatitis C because he was no longer insured and unable to secure payment for the medication." (Joint Stip. at 13.)  While it is true that the record reflects that plaintiff did not have insurance for a limited period of time (*compare* A.R. 405 (7/6/09 - "[plaintiff] has not been taking [his hepatitis C] medication for two days because he ran out of insurance"), *with* A.R. 447 (8/28/09 - noting plaintiff's hepatitis C treatment had  been "restarted"), plaintiff provides absolutely no explanation for his failure to seek treatment when he still had insurance.  As such, plaintiff's claim is unavailing.

1  convincing reason not to credit fully his subjective symptom testimony.[10] *See* Morgan v. Comm'r

2  of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)(ALJ may discount claimant's credibility

3  based on medical improvement).

4

5  Lastly, the ALJ discredited plaintiff, because he "engaged in activities of daily living which

6  were inconsistent with [his] allegation that he was totally disabled." (A.R. 27-28.)  The ALJ noted

7  that "[plaintiff] was independent in self care, prepared his own meals daily, performed household

8  chores such as cleaning, doing the laundry, reading, making models, painting and doing wood

9  work."  (*Id.*)  The ALJ also noted that "[plaintiff] enjoyed watching the Discovery and History

10 channel[s]."  (A.R. 28.)  As an initial matter, the ALJ's description of plaintiff's daily activities is

11 incomplete and misleading.  For example, the ALJ failed to include plaintiff's statement that he

12 does household chores only "if [he] feel[s] up to it" (A.R. 183) and his statement that he does

13 not watch cable television or do any hobbies, except reading, because he cannot afford them

14 (A.R. 184).  Moreover, and significantly, beyond failing to accurately describe plaintiff's daily

15 activities, the ALJ failed to specifically articulate *how* plaintiff's daily activities are inconsistent with

16 his allegedly disabling symptoms.  *S*ee Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(only

17 if the level of activity was inconsistent with claimant's claimed limitations would the activity have

18 any bearing on claimant's credibility).  Thus, without more, the ALJ's boilerplate statement cannot

19 constitute a clear and convincing reasoning for finding plaintiff to be not credible.

20

21 The Court finds, however, that the ALJ's error in relying on plaintiff's daily activities to

22 undermine his credibility was harmless, because the ALJ's other reasons and ultimate credibility

23 determination are supported by substantial evidence.  *See* Carmickle, 533 F.3d at 1162–63

24 (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination

25 was harmless where remaining reasons were adequately supported by substantial evidence).  The

26

27 [10]  Plaintiff asserts that the evidence submitted to the Appeals Council "paints a portrait
28 of a man who continues to deteriorate mentally."  (Joint Stip. at 13.)  However, plaintiff's
assertion that his condition deteriorated is unpersuasive for the reasons discussed *supra*.

Court therefore finds and concludes that reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's testimony.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error.   Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for the Commissioner.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  October 30, 2013

_Margaret A. Nagle_

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

14